IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of Victor Mikhaylovich Pinchuk,<br><br>    Applicant. | )<br>)<br>)  C.A. No.<br>)<br>) |

### *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW

Applicant, Victor Mikhaylovich Pinchuk ("Pinchuk" or the "Applicant"), respectfully submits this Ex Parte Application for Discovery Pursuant to 28 U.S.C. § 1782 (the "Application") seeking discovery from: (i) Chemstar Products LLC; (ii) Demeter Diversified LLC; and (iii) Empire Chemical LLC (collectively, the "Discovery Subjects").

The Discovery Subjects are corporate residents of, or can be found in, the District of Delaware. Applicant requests the discovery for use in two foreign proceedings against Applicant's business partners, Igor Valeryevich Kolomoisky ("Kolomoisky") and Gennadiy Borisovich Bogolyubov ("Bogolyubov") and companies owned and/or controlled by Kolomoisky and/or Bogolyubov: (i) a pending civil action (consisting of multiple petitions) in the Republic of Cyprus (the "Cyprus Court Actions"); and (ii) a pending arbitration in the London Court of International Arbitration (the "London Arbitration"), (together, the "Foreign Proceedings"). A copy of the Request for Arbitration is attached as Exhibit 2 to the Declaration of Henry Forbes Smith ("Smith Decl.") being filed contemporaneously herewith. A representative Petition filed in the Cyprus Court Actions is attached as Exhibit 2 to the Declaration of Alexandros Tsirides ("Tsirides Decl.") being filed contemporaneously herewith.

In the Cyprus Court Actions, Applicant's investment companies seek injunctive relief to protect investments in Cypriot holding companies that Kolomoisky and Bogolyubov are dissipating or transferring to the detriment of the Applicant. In the London Arbitration,

RLF1 9558006v.1

Applicant seeks damages as a result of Kolomoisky's and Bogolyubov's misappropriation of business opportunities, self-dealing transactions and failure to distribute profits to Applicant in violation of the parties' agreements and understandings.

As set forth below, the requested discovery meets the requirements of 28 U.S.C. § 1782, as well as the factors set forth by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004). The Discovery Subjects have information that is highly relevant to the claims asserted in the Cyprus Court Actions and the London Arbitration.

## FACTUAL BACKGROUND

### I.  THE RELEVANT PARTIES

Pinchuk is a Ukrainian citizen who resides in Ukraine. Kolomoisky is a dual citizen of Ukraine and Israel, and currently resides in Switzerland. Bogolyubov is a Ukrainian citizen who resides in England. Kolomoisky and Bogolyubov have been business partners since the late 1980s, together owning a number of different types of businesses, including extensive interests in the ferroalloy business. Pinchuk also owns extensive interests in the ferroalloy[1] business.

In November 2006, after lengthy negotiations, Pinchuk, Kolomoisky, Bogolyubov, and others agreed to pool their respective interests, as well as all future acquisition opportunities, in the ferroalloy business in Ukraine and elsewhere. For purposes of this Application, the accumulation of these ferroalloy interests in numerous Cypriot entities is hereinafter referred to as "Ferroalloy Holding." Ferroalloy Holding is not a separate corporate entity, has no juridical existence, and the term is used in this Application for convenience. The parties further agreed to share in the profits of the ferroalloy business (which included any future acquisition

---

[1] Ferroalloys are iron alloys with a high proportion of other elements that are used to make steel.

opportunities) in proportion to their respective interests in Ferroalloy Holding. According to the parties' agreements and understandings, Kolomoisky and Bogolyubov together currently hold a 50% interest in Ferroalloy Holding, and Pinchuk currently holds a 25% interest.[2]

## II. BASIS FOR DISPUTE BETWEEN PINCHUK AND KOLOMOISKY AND BOGOLYUBOV

Kolomoisky and Bogolyubov have violated the various agreements and understandings relating to Ferroalloy Holding, causing Pinchuk and his investment companies significant monetary damages. *See* Smith Decl. at 3-6, ¶¶ 11-16. In the Cyprus Court Actions, investment companies owned by Pinchuk (the "Cyprus Action Petitioners") assert statutory claims against the Cypriot ferroalloy asset holding companies that comprise Ferroalloy Holding, in which the Cyprus Action Petitioners are minority shareholders. The Cyprus Action Petitioners seek the liquidation of these holding companies in order to preserve and protect:

(1) ferroalloy assets which Bogolyubov and/or Kolomoisky acquired without offering participation to Pinchuk through his interest in Ferroalloy Holding or otherwise; and

(2) ferroalloy assets and profits which Bogolyubov and Kolomoisky are dissipating or transferring to the detriment of the Applicant.

*See* Tsirides Decl. at 3-5, ¶¶ 12-13. In the London Arbitration, Pinchuk seeks damages as a result of Kolomoisky's and Bogolyubov's:

(1) failure to offer Pinchuk opportunities to participate, in proportion to Pinchuk's interest in Ferroalloy Holding or otherwise, in ferroalloy industry assets subsequently acquired by Kolomoisky and/or Bogolyubov;

(2) failure to distribute to Pinchuk his share of the profits in the assets of Ferroalloy Holding; and

---

[2] The remaining 25% interest in Ferroalloy Holding is currently held by three other partners from whom no relief is sought in the Foreign Proceedings. All references to the ownership interests in Ferroalloy Holding are as of the end of 2011 through the present date. (The parties' respective ownership interests in Ferroalloy Holding have varied between 2006 and 2011.)

> (3) misappropriation and diversion of profits and assets from Ferroalloy Holding, including through self-dealing transactions, to companies owned and/or controlled by Kolomoisky and Bogolyubov, including the Discovery Subjects.

*See* Smith Decl. at 5, ¶ 15.

## III. THE DISCOVERY SUBJECTS

The Discovery Subjects are Delaware limited liability companies that can be found in the District of Delaware. None are named in either the Cyprus Court Actions or the London Arbitration.

### A. The Discovery Subjects

The Discovery Subjects consist of the following entities:

- **Chemstar Products LLC ("Chemstar").** Chemstar was incorporated in Delaware in 2003. Its registered agent is Worldwide Incorporators Ltd., 3411 Silverside Road, Rodney Building, Suite 104, Wilmington, DE, 19810. The initial member of Chemstar is Georgia Constantinou of Limassol, Cyprus.

- **Demeter Diversified LLC ("Demeter").** Demeter was incorporated in Delaware in 2001. Its registered agent is Delaware Business Incorporators, Inc., 3422 Old Capitol Trail, Suite 700, Wilmington, DE 19808-6192. The initial member of Demeter is Menelaos Sazos of Limassol, Cyprus.

- **Empire Chemical LLC ("Empire").** Empire was incorporated in Delaware in 2003 by Alexandra Kouras of Unitrust Management LLC. After a period of being administratively dissolved, Empire was revived with the filing of a Certificate of Revival on September 24, 2013. Its registered agent is Worldwide Incorporators Ltd., 3411 Silverside Road, Rodney Building, Suite 104, Wilmington, DE 19810. The individual who signed Empire's Certificate of Revival is Maria Konstantinou.

Applicant believes that the Discovery Subjects are owned and/or controlled by Kolomoisky and/or Bogolyubov through formal and informal corporate structures designed to operate Kolomoisky's and/or Bogolyubov's interests in the ferroalloy business, including the related ferroalloy shipping business. Pinchuk should have been offered an opportunity to participate in the Discovery Subjects or their assets, through his interest in the Ferroalloy

Holding. The Discovery Subjects are among the companies in the ferroalloy industry to which Kolomoisky and Bogolyubov are alleged to have illegally diverted ferroalloy assets and profits from Ferroalloy Holding. The Discovery Subjects have financial and other information relating to the diversion of ferroalloy assets and profits in which Pinchuk has an interest; accordingly, discovery from the Discovery Subjects is highly relevant to the claims asserted in Cyprus and London. *See* Tsirides Decl. at 6, ¶¶ 20-21; *See* Smith Decl. at 6, ¶ 17.

## RELIEF REQUESTED

The Applicant seeks the following information in the possession, custody and control of the Discovery Subjects, including electronically-stored information ("ESI"), as defined in the Federal Rules of Civil Procedure:

**I.    DOCUMENTS**

From each of the Discovery Subjects:

(1) The articles of incorporation, by-laws, minutes, board materials, and resolutions of each Discovery Subject, including any amendments thereto;

(2) An organizational chart or documents sufficient to show the directors and officers of each Discovery Subject, both at the time of incorporation and presently;

(3) A chart of or documents sufficient to show the corporate parents, subsidiaries, and any affiliates for each Discovery Subject, both at the time of incorporation and presently;

(4) Documents showing how the Discovery Subjects were and have been capitalized during the period of January 1, 2006 to the present;

(5) Documents showing the identity of any shareholder, member or beneficial owner of each Discovery Subject, both at the time of incorporation and presently;

(6) Documents reflecting non-privileged communications by any Discovery Subject with Kolomoisky or Bogolyubov or any agent of Kolomoisky or Bogolyubov regarding the ferroalloy business or related ferroalloy shipping business;

(7) Documents regarding the ferroalloy business or related ferroalloy shipping business and referring to Ferroalloy Holding, Pinchuk, EastOne Group Ltd., Interpipe, Mikhail Iosifovich Spektor ("Spektor"), Mikhail Viktorovich Voevodin ("Voevodin"), or Alexander Mikhaylovich Babakov ("Babakov");[3]

(8) Quarterly and annual financial statements (including Profit and Loss Statements, Balance Sheets, and Statements of Cash Flows) for each Discovery Subject from January 1, 2006 to the present;

(9) Documents reflecting internal or external valuations, appraisals, liquidation analyses, fairness or solvency opinions, or other documents concerning the value of the assets of any Discovery Subject; and

(10) Documents referring to Georgian American Alloys, Inc., Felman Production LLC, Felman Trading LLC, CC Metals & Alloys LLC, Ferrost LLC, or Solmex LLC.[4]

## II. DEPOSITION TESTIMONY

At this time, the Applicant does not seek deposition testimony. Applicant reserves the right to seek depositions if the document discovery reveals the identity of individuals with knowledge pertinent to the Cyprus Court Actions or the London Arbitration.

## MEMORANDUM OF LAW

### I. THE APPLICATION MEETS ALL OF THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

28 U.S.C. § 1782 is designed to allow parties to non-U.S. proceedings to take discovery in the United States for use in those non-U.S. proceedings. It provides in part:

---

[3] As discussed in the Tsirides Declaration, Messrs. Spektor, Voevodin and Babakov are business partners who participate in the Ferroalloy Holding. *See* Tsirides Decl. at 2-3, ¶¶ 6-8. Although Spektor is named as a nominal Respondent in the London Arbitration, Pinchuk does not assert breach of contract claims against Spektor in connection with Ferroalloy Holding. *See* Smith Decl. at 2, ¶ 7.

[4] All of these entities are U.S. entities believed to be beneficially owned and/or controlled by Kolomoisky and/or Bogolyubov, affiliated with the Discovery Subjects, and involved in the ferroalloy business, or the related ferroalloy shipping business.

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). Section 1782 allows a "broad range of discovery" so as to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259, 262 (2004). As described by the Third Circuit Court of Appeals, there are three basic requirements for § 1782 discovery:

> (1) the person from whom discovery is sought must reside in the district;
>
> (2) the discovery must be for use in proceedings before a foreign tribunal; and
>
> (3) the application be made by either the foreign tribunal or by an interested party.

*Kulzer v. Esschem, Inc.*, 390 Fed. Appx. 88, 91 (3rd Cir. 2010) (citing *In re Merck & Co.*, 197 F.R.D. 267, 270 (M.D.N.C.2000); *Esses v. Hanania*, 101 F.3d 873, 875 (2d Cir.1996)); *see also Intel*, 542 U.S. at 246-47. The Application meets all of these statutory requirements.

A. **The Discovery Subjects Are Found in this District**

Each of the Discovery Subjects is in this District, conducting business through their agents in the State of Delaware or through their residence in the State of Delaware as follows:

(1) Chemstar Products LLC
c/o Worldwide Incorporators Ltd.
3411 Silverside Road
Rodney Building, Suite 104
Wilmington, DE 19810

(2)     Demeter Diversified LLC
c/o Delaware Business Incorporators, Inc.
3422 Old Capitol Trail, Suite 700
Wilmington, DE 19808-6192

The above address is also listed as belonging to Demeter on documentation related to shipments of ferromanganese products from Ukraine to the U.S.

(3)     Empire Chemical LLC
c/o Worldwide Incorporators Ltd.
3411 Silverside Road
Rodney Building, Suite 104
Wilmington, DE 19810

Accordingly, each Discovery Subject falls within § 1782.

**B.  The Evidence Will Be Used in Proceedings in a Foreign or International Tribunal**

**1.  *The Cyprus Court Actions are foreign proceedings under § 1782***

The Limassol District Court in the Republic of Cyprus, where the Cyprus Court Actions are pending, is a foreign tribunal under § 1782. *See Weber v. Finker*, 554 F.3d 1379, 1381 (11th Cir.), *cert. denied* 558 U.S. 816 (2009); *In re Bank of Cyprus Public Co. Ltd.*, 10 Misc. 23, 2011 WL 223168, at *2 (S.D.N.Y. Jan. 21, 2011). Accordingly, the Cyprus Court Actions are foreign proceedings for which the discovery may be sought.

**2.  *The London Arbitration is a foreign proceeding under § 1782***

The London Arbitration was filed by Pinchuk before the London Court of International Arbitration (the "LCIA"). As detailed below, the LCIA qualifies as a foreign or international tribunal that is covered by § 1782. The Eleventh Circuit and several District Courts have recognized that proceedings like the London Arbitration fall within § 1782.

Private international arbitral proceedings, like the London Arbitration, constitute a "proceeding" before a "foreign tribunal" under § 1782. *Comisión Ejecutiva, Hidroeléctrica del*

*Rio Lempa v. Nejapa Power Co., Inc.*, No. 08-135-GMS, 2008 WL 4809035, at *1 (D. Del. Oct. 1, 2008), *vacated on other grounds by* 341 Fed. Appx. 821, 828 (3d Cir. 2009) ("In fact, the Supreme Court's decision in *Intel* (and post-*Intel* decisions from other district courts) indicate that Section 1782 does indeed apply to private foreign arbitrations.") (citing *Intel*, 542 U.S. 241 at 258; *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1226–27 (N.D. Ga. 2006); *In re Application of Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 954–55 (D. Minn. 2007)); *In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 995 (11th Cir. 2012) (holding that a foreign arbitration panel fell within § 1782's scope); *In re Mesa Power Group, LLC*, 2013 WL 1890222, at *5 (D.N.J. Apr. 19, 2013) ("In line with the Supreme Court's exposition of § 1782 in *Intel* a majority of courts have found that an international arbitration proceeding [under UNICITRAL rules] constitutes a 'foreign or international tribunal' . . . ." (citing *In re Oxus Gold PLC*, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007)); *In re Veiga*, 746 F. Supp. 2d 8, 22–23 (D.D.C. 2010); *In re Chevron Corp.*, 709 F.Supp.2d 283, 291 (S.D.N.Y. 2010); *Ukrnafta v. Carpatsky Petroleum Corp.*, 2009 WL 2877157, at *4 (D. Conn. Aug. 27, 2009)).

In *Intel*, the U.S. Supreme Court recognized that in amending § 1782 "Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'" *Intel*, 542 U.S. at 248-48 (citations to Congressional Record omitted). The Supreme Court then engaged in a lengthy analysis of whether the Directorate-General for Competition of the European Commission was a "tribunal" under the statute. Based on *Intel*, the Eleventh Circuit listed four factors to be examined in determining whether an arbitral tribunal qualifies as a "foreign tribunal." *Consorcio Ecuatoriano*, 685 F.3d at 995. An arbitral body functions as a

"foreign tribunal" within the scope of § 1782 if: (1) it is a first-instance adjudicative decisionmaker; (2) it permits the gathering and submission of evidence; (3) it has authority to determine liability and impose penalties; and (4) its decision is subject to judicial review. *See id.*

The LCIA satisfies these factors. It is a preeminent quasi-judicial body, with authority to hear disputes, weigh evidence, and issue a decision that is binding on the parties. *See* Smith Decl. at 6-10, ¶¶ 19-30. Moreover, its decisions are subject to judicial review. *See* Smith Decl. at 10-15, ¶¶ 31-42; *see also, In re Application of Rusal Global Mgmt. B.V.*, No. CV 12-08898 PSG, slip op. at 1 (C.D. Ca. Oct. 31, 2013) (denying motion to quash § 1782 application, where one of the contested issues in oral argument and in the briefing was whether the LCIA is subject to judicial review, finding by implication that the LCIA is so subject) (Exhibit A); Transcript of Oral Argument, *In re Application of Rusal Global Mgmt.*, No. CV 12-08898 PSG, at 4-10, 22-25 (C.D. Cal., Feb 12, 2013) (Exhibit B). Thus, the London Arbitration qualifies as a "proceeding" before a "foreign tribunal" for purposes of § 1782.

### 3. *The requested discovery is relevant to both Foreign Proceedings*

Both the Limassol District Court in Cyprus and the LCIA tribunal can benefit from the discovery that this Application seeks. The documents requested about the beneficial ownership and financial value, assets, and/or capitalization of the Discovery Subjects will assist the tribunal in London in adjudicating Pinchuk's breach of contract claims, and also will assist in establishing in the Cyprus Court Actions that Cypriot holding companies that collectively constitute Ferroalloy Holding are subject to liquidation under Cypriot law based on the prejudice caused by Kolomoisky's and Bogolyubov's actions, including their transfer of assets and operation of the Discovery Subjects. Each Discovery Subject is involved in some way in the ferroalloy business, or the related ferroalloy shipping business, and is an entity in which Pinchuk

should have been offered the opportunity to participate, in accordance with the parties' agreements and understandings.

Specifically, **Demeter** is engaged in the shipment of ferromanganese, a product produced in a Ukrainian plant under the control of Kolomoisky and Bogolyubov's interests. The shipments of ferromanganese are coming into the United States through New Orleans. For those shipments, the shipper is listed as working on behalf of Demeter at its Delaware address. The ferromanganese being shipped originated at a plant in the Ukraine named "Marganets," which is, controlled by Privat Intertrading, which is, in turn, controlled by Kolomoisky and Bogolyubov.

**Empire** is controlled by a Ukranian-based conglomerate called the Privat Group, which is controlled by Kolomoisky and Bogolyubov.

**Chemstar** is a trading company heavily involved with Consolidated Minerals ("ConsMin"), a company with Australian and Ghanian manganese assets and which was acquired by Bogolyubov and/or Kolomoisky. ConsMin, in turn, conducts transactions with Chemstar, which moves manganese ore into the Ukraine for ConsMin. ConsMin's transactions with Chemstar are considered related-party transactions.

Each Discovery Subject may have information of other entities beneficially owned and/or controlled by Kolomoisky and/or Bogolyubov and involved in the ferroalloy industry or related ferroalloy shipping business in which Pinchuk should have been offered the opportunity to participate. Pinchuk's reasonable discovery requests will shed light on the levels of involvement the Discovery Subjects each have with Kolomoisky and/or Bogolubov, and will then inform proceedings in the Cyprus Court Actions and the London Arbitration.

### C. Pinchuk is an "Interested Person"

Pinchuk is an "interested person" within the meaning of § 1782. In *Intel*, the Supreme Court defined an "interested person" under § 1782 to include a litigant in a foreign proceeding. *Intel*, 542 U.S. at 256. An interested person is someone who has a role in submitting evidence and has participation rights in the foreign tribunal, and includes someone who has a "reasonable interest in obtaining judicial assistance." *Id.* Pinchuk is such a person. Pinchuk is an "interested person" because the Cyprus Court Action Petitioners are Pinchuk's investment companies, and the respondents in the Cyprus Court Actions are the Cypriot holding companies that comprise Ferroalloy Holding. *See* Tsirides Decl. at 3-5, ¶ 13. Pinchuk is also the claimant in the London Arbitration. *See* Smith Decl. at 2, ¶ 5. By this Application, Pinchuk seeks to gather evidence and testimony for use in connection with both the Cyprus Court Actions and the London Arbitration.

### D. Granting the Application Would Foster the Twin Policy Aims of § 1782

Granting the Application would foster § 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252 (internal quotations omitted).[5]

The first aim would be served because, as set forth above, the proposed discovery is narrowly tailored to seek information that is likely to be highly relevant both to the Cyprus Court Actions and the London Arbitration. Thus, granting the Application would be an efficient means of assisting a party before foreign tribunals. *See Lancaster Factoring Co. Ltd. v. Mangone*, 90

---

[5] These "twin aims" are consistent with the legislative history of § 1782, which "reflects a determination on the part of Congress to broaden the scope of international judicial assistance afforded by the federal courts" and hopefully stimulate reciprocal aid from other countries. *See John Deere*, 754 F.2d at 135 (legislative history of § 1782).

RLF1 9558006v.1

F.3d 38, 41 (2d Cir. 1996) (goals of § 1782, which dates back to 1855, are to provide "equitable and efficacious" discovery procedures in U.S. courts 'for the benefit of tribunals and litigants involved in litigation with international aspects") (quoting S. Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964) ("Senate Report")); *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) (noting that a "liberal intent to provide judicial assistance" has been "acknowledged as a primary statutory goal since § 1782's inception").

The second aim would be served because granting the Application would further the exchange of judicial assistance between the United States and both the United Kingdom and Cyprus. *See John Deere*, 754 F.2d at 135 (noting that § 1782 takes into account "considerations of comity and sovereignty that pervade international Law" and that reciprocity is not a requirement for its application). Accordingly, the "twin aims" of § 1782 support granting Pinchuk's Application. As such, because Pinchuk's Application meets all of the statutory requirements for invoking 28 U.S.C. § 1782, this Court has jurisdiction to order the Discovery Subjects to provide the requested discovery.

## II. THE COURT SHOULD EXERCISE ITS JURISDICTION UNDER SECTION 1782 AND GRANT THE APPLICATION

Once the Court has determined that the statutory requirements for relief under § 1782 have been met, the Court is vested with the discretion to afford that relief. In *Intel*, the Supreme Court identified the four factors to be used in deciding whether § 1782 relief should be granted:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceedings," because "the need for §1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) "whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the request is otherwise "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264-65. Each of these factors supports granting Pinchuk's Application.

### A. The Discovery Subjects Are Not Parties to the Foreign Proceedings

The Discovery Subjects are not parties to the Cyprus Court Actions or the London Arbitration, and are not expected to become parties to those proceedings. The § 1782 discovery will inform the Limassol District Court in Cyprus with respect to the injunctions that the Cyprus Action Petitioners seek in the Cyprus Court Actions. Section 1782 also plays a significant role in Pinchuk's ability to obtain discovery from the Discovery Subjects regarding Kolomoisky's and Bogolyubov's concealed assets in which Pinchuk may have a legal interest and the existence of which will demonstrate that Kolomoisky and Bogolyubov breached their agreements and understandings with Pinchuk, as he alleges in the London Arbitration.

### B. The LCIA and the Cypriot Courts Are Not Hostile to this Application

"Inasmuch as relevant evidence is presumptively discoverable, "[t]he party opposintg discovery [under section 1782(a)] has the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application. *In re Chevron Corp.*, 633 F.3d 153, 161 (3d Cir. 2011) (quoting *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 (3d Cir. 1999)) (alterations in original). There is no law, rule of evidence or rule of procedure in the LCIA that prohibits Pinchuk from filing this Application or from seeking and obtaining the discovery requested. Smith Decl. at 10, ¶ 30. Nor does Cypriot law--which follows an English common law tradition--forbid or restrict this Application and any relevant discovery that may be obtained. Tsirides Decl. at 7, ¶ 22.

### C. The Application Has Not Been Filed to Circumvent Any Law or Rule

The Application has been interposed for a proper purpose. The Application is the only practical way that Pinchuk has to obtain highly relevant evidence relating to concealed assets controlled by Kolomoisky and Bogolyubov through the Discovery Subjects. Absent relief under § 1782, Pinchuk will be deprived of key evidence for use in both the Cyprus Court Actions and the London Arbitration, indeed, evidence relating to assets in which he has a legal interest.

### D. The Discovery Requests Are Not Unduly Intrusive or Burdensome

Finally, Pinchuk's Application is narrowly tailored to the subject matter of the Cyprus Court Actions and the London Arbitration. The information sought is focused, highly relevant and necessary for a fair and just resolution of the underlying matters. In light of the fact that all four factors weigh in favor of granting the requested discovery, Pinchuk respectfully requests that the Court grant his Application.

### III. THE DISCOVERY SUBJECTS SHOULD PRESERVE RELEVANT EVIDENCE

The requested evidence is for use in a proceeding that concerns the improper concealment of assets. Accordingly, Pinchuk submits this Application on an *ex parte* basis and seeks an order directing the Discovery Subjects to preserve the evidence sought. To the extent that the Discovery Subjects seek protection from any of the proposed discovery, they can address those issues in response to the requested discovery or through an appropriate motion. *See, e.g., John Deere, Ltd.*, 754 F.2d at 136 (reversing a District Court order vacating a previous grant of a § 1782 application); *In re Clerici*, 481 F.3d 1324, 1329 (11th Cir. 2007) (affirming district court's denial of motion to vacate order granting *ex parte* § 1782 application).

The relevant events began in 2006 and have continued through to the present, and Applicant is concerned that some or all of the documentary evidence sought may be lost or

15

jeopardized by the Discovery Subjects' document retention and destruction policies or otherwise. Hence, the Discovery Subjects should be directed to preserve all such potentially relevant evidence. *See In re Application of Pinchuk*, 2013 WL 5574342, at *3 (granting application under § 1782 and requiring discovery subjects to "preserve documents and evidence electronic or otherwise, in their possession, custody or control that contain information potentially relevant to the subject matter" of the applicant's discovery requests); *In re Application of Nat'l Broadcasting Co., Inc.*, 1997 WL 33442116 (S.D.N.Y. Aug. 1, 1997) (same).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Applicant Victor Mikhaylovich Pinchuk respectfully requests that the Court: (i) grant this Application for Discovery Pursuant to 28 U.S.C. § 1782 with respect to documents requested herein, and order the Discovery Subjects to produce said documents within thirty (30) days; (ii) direct each of the Discovery Subjects to duly preserve all evidence related to the subject matter of this Application; (iii) permit the Applicant to issue additional subpoenas fifteen (15) days after filing of Notice of Intent to Serve Subpoena, to any other party residing or found within the District of Delaware likely to have relevant evidence to be used in the Cyprus Court Actions and/or the London Arbitration; and (iv) permit the Applicant to seek further documents and/or testimony from the Discovery Subjects based on documents and information obtained from the Discovery Subjects or from any other party in response to any other subpoena issued in connection with this Application.

RLF1 9558006v.1

|  |  |
|---|---|
| | */s/ Kelly E. Farnan* |
| | Kelly E. Farnan (#4395) |
| | Richards, Layton & Finger, P.A. |
| | One Rodney Square |
| | 920 North King Street |
| | Wilmington, DE 19801 |
| | (302) 655-7700 |
| | Farnan@rlf.com |
| | *Attorneys for the Applicant, Victor* |
| Dated: November 6, 2013 | *Mikhaylovich Pinchuk* |