# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VICTOR MIKHAYLOVICH PINCHUK,<br><br>    Petitioner,<br><br> v.<br><br>CHEMSTAR PRODUCTS LLC,<br>DEMETER DIVERSIFIED LLC, and<br>EMPIRE CHEMICAL LLC,<br><br>    Respondents. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 13-mc-306-RGA<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RESPONDENTS' OPENING BRIEF IN SUPPORT OF MOTION TO VACATE IN PART THE COURT'S ORDERS GRANTING *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782 AND COMPELLING PRODUCTION AND/OR QUASH SUBPOENAS**

              Bradley R. Aronstam (Bar No. 5129)
              Benjamin J. Schladweiler (Bar No. 4601)
              SEITZ ROSS ARONSTAM & MORITZ LLP
              100 S. West Street, Suite 400
              Wilmington, DE 19801
              (302) 576-1600
              baronstam@seitzross.com
              bschladweiler@seitzross.com

              *Counsel for Chemstar Products LLC,*
              *Demeter Diversified LLC, and Empire*
              *Chemical LLC*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ...............................................................................2

    I.  London Arbitration Proceedings................................................................................2

    II.  Cyprus Actions..........................................................................................................3

    III. Proceedings Before This Court..................................................................................4

SUMMARY OF ARGUMENT ......................................................................................................6

ARGUMENT ..................................................................................................................................6

I.      The Court Should Vacate In Part Its Previous Orders And/Or Quash The Subpoenas As Improperly Issued Because The Discovery Sought Is Not Warranted ..............6

    1) Accepting Mr. Pinchuk's Allegations, The Discovery Sought By The Subpoenas Is Available From Participants In The Foreign Proceedings ........................7

    2) The Foreign Tribunals Have Not Expressed Receptivity To Discovery Assistance From The United States Courts ..................................................................8

    3) The Discovery Sought By The Subpoenas Would Circumvent The Procedural Limits Of The Foreign Tribunals .................................................................9

    4) The Discovery Sought By The Subpoenas Is Overbroad and Unduly Burdensome ..................................................................................................................10

II.    The Court Should Vacate Its Previous Orders And/Or Quash The Subpoenas To The Extent They Require And/Or Seek The Production Of Documents Located In Foreign Countries..................................................................................................11

CONCLUSION..............................................................................................................................13

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Heraeus Kulzer GmbH v. Esschem, Inc.*,
 390 Fed. App'x. 88 (3d Cir. 2010) .................................................................................... 6, 11

*In re Gemeinschcaftspraxis*,
 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................................................... 11-12

*In re Godfrey*,
 526 F. Supp. 2d 417 (S.D.N.Y. 2007) ........................................................................ 7, 11, 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004) .............................................................................................................. passim

*Kreke Immobilien KG*,
 2013 WL 5966916 ....................................................................................................................... 11

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,
 384 F. Supp. 2d 45 (D.D.C. 2005) ............................................................................................ 11

*Via Vadis Controlling GmbH v. Skype, Inc.*,
 2013 WL 646236, C.A. No. 12-mc-193-RGA (D. Del. Feb. 21, 2013) ................................. 8, 9

**Other Authorities**

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*,
 25 Syracuse J. Int'l L. & Commerce 1 (1998) .......................................................................... 12

Pursuant to Rules 60 and 45(c) of the Federal Rules of Civil Procedure, Respondents Chemstar Products LLC ("Chemstar"), Demeter Diversified LLC ("Demeter"), and Empire Chemical LLC ("Empire") (collectively, "Respondents") hereby move to vacate in part the Court's November 19, 2013 Order Granting *Ex Parte* Application For Discovery Pursuant To 28 U.S.C. § 1782, Authorizing Applicants To Serve Subpoenas (D.I. 5) (the "Section 1782 Order") and the Court's December 30, 2013 Order Compelling Discovery (D.I. 10) (collectively with the Section 1782 Order, the "Court's Orders" or "Orders") or, in the alternative, to quash the three subpoenas (attached as Exhibits A, B and C) (collectively, the "Subpoenas") issued from this Court on November 20, 2013 by Petitioner Victor Mikhaylovich Pinchuk. Respondents do not challenge the document preservation aspect of the Section 1782 Order.

## PRELIMINARY STATEMENT

The Section 1782 Order was understandably predicated on Mr. Pinchuk's *ex parte* application (D.I. 1) which, by definition, conveyed only one side of the story. Contrary to Mr. Pinchuk's characterizations, Respondents are headquartered in Cyprus and have no offices or employees in the United States. (*See* Declarations of Maria Konstantinou, Despoina Charalampous Nikolaou, and Antri Lamprou, submitted herewith). Indeed, Respondents have no connection to Delaware other than their existence as Delaware limited liability companies. (*Id.*) Moreover, Respondents have already produced all of their documents located in the United States. The instant dispute therefore involves Mr. Pinchuk's attempt to obtain documents located in foreign countries for alleged use in foreign proceedings he, and companies affiliated with him, initiated before the London Court of International Arbitration (the "London Tribunal") and the courts of Cyprus (the "Cyprus Court") (collectively with the London Tribunal, the "Foreign Tribunals").

As explained below, however, not only is Mr. Pinchuk's extraterritorial use of 28 U.S.C. § 1782 improper, his entire application rests on the faulty premise that the Foreign Tribunals "can benefit from the discovery" sought by the Subpoenas. (D.I. 1 at 10). The London Tribunal has made clear that it neither wants nor needs this discovery. *See infra*, at 2-3. And the Cyprus Court, which currently has threshold and potentially case dispositive motions to stay and/or dismiss pending before it, has yet to rule on the proper scope of discovery. *See infra*, at 3-4. At its simplest, Mr. Pinchuk's application is a multi-national fishing expedition. At its worst, his application seeks to circumvent the applicable rules, procedures, and prerogatives of the foreign tribunals. Either way, and for the reasons set forth below, this Court should vacate its Orders permitting and compelling such discovery.

## NATURE AND STAGE OF PROCEEDINGS

### I.     London Arbitration Proceedings

The international arbitration before the London Tribunal (the "London Arbitration") was initiated by Mr. Pinchuk on August 2, 2013 against Igor Kolomoisky, Gennadiy Bogolyubov, and Mikhail Spektor, all of whom are Ukrainian citizens. (D.I. 2 at 1-2). In those proceedings, Mr. Pinchuk claims "damages as a result of Kolomoisky's and Bogolyubov's [alleged] misappropriation of business opportunities, self-dealing transactions and failure to distribute profits to [Pinchuk] in violations of the parties' agreements and understandings." (D.I. 1 at 2).

On December 16, 2013, the London Tribunal, in response to inquiries from the Southern District of Florida, held a hearing to address, among other things, a related Section 1782 application by Mr. Pinchuk in Florida. Following argument and review of the parties' written submissions, the London Tribunal ruled on December 18, 2013 that it "<u>does not presently need to seek the assistance of the U.S. courts for the purposes of this arbitration</u>." (Exhibit D)

(emphasis added).  The London Tribunal also instructed the parties that it would "convene a further hearing to review the status of the proceedings" on January 14, 2014.  (*Id.*)

That same day, Mr. Pinchuk's counsel withdrew in the face of a pending motion for an injunction.  (Exhibit E).  Mr. Pinchuk then requested that the London Tribunal postpone the January status hearing until late February or late March 2014 to allow him time to obtain new counsel.  (Exhibit F).  On January 10, 2014, the London Tribunal issued an order granting Mr. Pinchuk's request and requiring the parties to hold February 18, 2014 and March 24, 2014 as potential dates for the continued status hearing.  (Exhibit G).  The London Tribunal noted that it "is unable to issue any further Order" in the meantime "since it is unable to hear arguments from all Parties."  (*Id.*)  Notably, that order also reflected the London Tribunal's "concern that its ability to proceed with the arbitration and, specifically, to be responsive to enquiries emanating from the Southern District of Florida, arises solely out of an absence of assistance from Counsel of record for [Mr. Pinchuk] in the arbitration," and noted that despite this "[Mr. Pinchuk] pursues his section 1782 application before the Florida Court."  (*Id.*)  The London Tribunal concluded by suggesting "it would be regrettable, if any decision were taken in proceedings in another jurisdiction intended to be in support of the arbitral process at a time when the Tribunal is unable to act by reason of [Mr. Pinchuk's] continuing lack of representation in the arbitration."  (*Id.*)  Mr. Pinchuk announced that he obtained new counsel on February 7, 2014, and the London Tribunal subsequently adjourned the date of the next procedural hearing to March 24, 2014.  (Exhibit H).

    **II.**    **Cyprus Actions**

Several companies owned and/or controlled by Mr. Pinchuk filed actions in Cyprus (the "Cyprus Actions") on November 5, 2013.  (*See, e.g.*, D.I. 4, Exhibit 2).  According to Mr.

3

Pinchuk, the Cyprus Actions seek "injunctive relief to protect investments in Cypriot holding companies that Kolomoisky and Bogolyubov are dissipating or transferring to the detriment of [Mr. Pinchuk]." (D.I. 1 at 1). Mr. Pinchuk's companies filed 22 petitions with the Cyprus Tribunal, one for each of the holding companies at issue. (D.I. 4 at 1-2).

On February 5 and 6, 2014, numerous respondents in the Cyprus Actions filed motions with the Cyprus Court to stay and/or strike each of the 22 petitions (an English translation of one of the 22 companies' Stay Applications is attached hereto as Exhibit I). These motions seek orders that would (1) stay the Cyprus Actions on the basis that agreements obligated Mr. Pinchuk to refer the disputes to arbitration in accordance with the shareholders' agreements governing the 22 holding companies, and (2) strike the petitions on the basis that they are frivolous, oppressive, filed for an improper purpose, and because Mr. Pinchuk's companies lack standing. (*Id*. at 1-2). If the motions are successful, the Cyprus Actions would be stayed pending resolution of the disputes in arbitration under the shareholders' agreements or, alternatively, struck entirely. And even if the Cyprus Actions move forward, it is not clear that the discovery Mr. Pinchuk seeks will be of use to, or even welcomed by, the Cyprus Court, which has not yet addressed issues of discovery given the infancy of the Cyprus Actions and the threshold (and potentially case dispositive) motions pending before it.

### III.   Proceedings Before This Court

The day after initiating the Cyprus Actions, Mr. Pinchuk filed an *ex parte* application with this Court seeking discovery from Respondents for use in the London Arbitration and the Cyprus Actions. (D.I. 1). The Subpoenas accompanying Mr. Pinchuk's Section 1782 application essentially seek *all* business and corporate documents of the Respondents, including:

- All documents from each of the three Respondents relating to the ferroalloy business, without any time limitation (Exhibits A-C, No. 7);

- All documents from each of the three Respondents concerning the value of any assets, without any time limitation (*id.*, No. 9);

- All communications between officers, directors, and employees from each of the three Respondents, without any time limitation (*id.*, No. 6);

- All "board materials" from each of the three Respondents without any time limitation (*id.*, No. 1);

- All capitalization documents from each of the three Respondents from January 1, 2006 to present (*id.*, No. 4); and

- All financial statements from each of the three Respondents from January 1, 2006 to present (*id.*, No. 8).

Mr. Pinchuk seeks this broad discovery based principally on his allegation that Respondents "may have information of other entities beneficially owned and/or controlled by Kolomoisky and/or Bogolyubov and involved in the ferroalloy industry or related ferroalloy shipping business in which Pinchuk should have been offered the opportunity to participate." (D.I. 1 at 11). In other words, Mr. Pinchuk is using Section 1782 in an attempt to uncover unknown information concerning unknown third parties who are not involved in the foreign proceedings but may have information concerning parties who are.

The Court granted the *ex parte* application on November 19, 2013 (D.I. 5) and granted Mr. Pinchuk's Motion to Compel the Subpoenas issued pursuant to the Court's November 19th order on December 30, 2013 (D.I. 10). In issuing the December 30 order, the Court explicitly declined to decide whether all objections to the Subpoenas have been waived because it "may not be advisable to do so in the absence of an adversary presentation." (D.I. 10). Shortly after Respondents retained counsel, they submitted objections and responses to the Subpoenas and met and conferred with Mr. Pinchuk's counsel. Respondents also voluntarily produced all documents located in the United States, notwithstanding their position that discovery under Section 1782 is unwarranted here.

5

After not hearing from Mr. Pinchuk's counsel for more than four weeks following the parties' meet and confer, Respondents' counsel inquired about the status of the dispute. (Exhibit J).  In response, Mr. Pinchuk's counsel informed Respondents that a dispute remains and that Mr. Pinchuk intends to file a motion to compel.  (*Id.*)  As Respondents explained to Mr. Pinchuk's counsel during the meet and confer, however, this dispute should be decided on motion from Respondents given the nature of the relief sought and the Court's previous Orders.

## SUMMARY OF ARGUMENT

1.	The Court should vacate the non-document preservation portions of the Orders and/or quash the Subpoenas because the discovery sought is not warranted pursuant to *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

2.	The Court should vacate the non-document preservation portions of the Orders and/or quash the Subpoenas to the extent they compel and/or seek the production of documents located outside the United States.[1]

## ARGUMENT

**I.	The Court Should Vacate In Part Its Previous Orders And/Or Quash The Subpoenas As Improperly Issued Because The Discovery Sought Is Not Warranted**

Pursuant to 28 U.S.C. § 1782, "foreign litigants may request production of documents that are located in a particular U.S. judicial district for use in foreign litigation."  *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 Fed. App'x. 88, 89 (3d Cir. 2010).  As recognized by the United States Supreme Court, however, a district court's mere authority to compel production under

---

[1] Although Respondents also object to the scope of the Subpoenas as overly broad and unduly burdensome, the parties agreed to submit the threshold issues raised herein and to revisit the proper scope of the Subpoenas to the extent necessary following the Court's rulings on the present motion.  This motion should therefore not be construed as a waiver of Respondents' objections to the scope of the Subpoenas.

6

Section 1782 does not mean that such discovery is warranted. *See Intel*, 542 U.S. at 264. Specifically, the Supreme Court has identified four non-exclusive, discretionary factors that bear on whether discovery under Section 1782 should be ordered: (1) whether "the person from whom discovery is sought is a participant in the foreign proceedings"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id*. at 264-65. As explained immediately below, all four *Intel* factors weigh in favor of vacating the non-document preservation portions of the Orders and/or quashing the Subpoenas.

**1) Accepting Mr. Pinchuk's Allegations, The Discovery Sought By The Subpoenas Is Available From Participants In The Foreign Proceedings**

The first *Intel* factor considers "[w]hether the documents . . . sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid." *In re Godfrey*, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007). Mr. Pinchuk asserts that he needs the discovery sought by the Subpoenas because "Kolomoisky and Bogolyubov are dissipating or transferring" the assets of certain "Cypriot holding companies" and misappropriating various "business opportunities" to Mr. Pinchuk's detriment. (D.I. 1 at 1-2). In particular, Mr. Pinchuk alleges that Respondents are "owned and/or controlled by Kolomoisky and Bogolyubov" and are among the companies "to which Kolomoisky and Bogolyubov are alleged to have illegally diverted ferroalloy assets and profits from Ferroalloy Holding." (*Id*. at 4-5). While Mr. Pinchuk does not explain the basis for his assertion that Respondents are "owned and/or controlled by Kolomoisky and Bogolyubov," assuming the truth of these assertions solely for argument's sake, the

7

discovery sought by the Subpoenas can be obtained directly from Messrs. Kolomoisky and Bogolyubov as both are participants in the London Arbitration.

Additionally, Respondents' representatives and offices are located in Cyprus, not the United States.  (*See* Nikolaou, Konstantinou, and Lamprou Declarations).  Thus, Respondents are presumably subject to the jurisdiction of the Cyprus Court, and Mr. Pinchuk has made no showing as to why he cannot obtain the documents through that tribunal, which would be the appropriate course as a matter of Cyprus law.  The documents Mr. Pinchuk seeks are therefore accessible without aid of Section 1782.

### 2) The Foreign Tribunals Have Not Expressed Receptivity To Discovery Assistance From The United States Courts

The second *Intel* factor inquires whether the "foreign court would consider the evidence revealed from a § 1782 order." *Via Vadis Controlling GmbH v. Skype, Inc.*, 2013 WL 646236, at *2, C.A. No. 12-mc-193-RGA (D. Del. Feb. 21, 2013).[2]  As detailed above, the answer to this question with respect to the London Tribunal is clearly "no," as that tribunal has explicitly ruled that it "does not presently need to seek the assistance of the U.S. courts for the purposes of this arbitration."  (Exhibit D).  Additionally, the Cyprus Actions are in their infancy, and the Cyprus Court has yet to rule on the proper scope of discovery.  Moreover, given the pending motions, the Cyprus Actions may well be stayed and/or dismissed before the Cyprus Court has any need

---

[2] Mr. Pinchuk asserts that this factor "supports granting Pinchuk's Application" because there "is no law, rule of evidence or rule of procedure" in the Foreign Tribunals "that prohibits Pinchuk from filing this Application or from seeking and obtaining the discovery requested."  (D.I. 1 at 14).  Putting aside the correctness or incorrectness of this statement, which is a hotly contested issue in the motions to stay and/or strike pending before the Cyprus Tribunal, Mr. Pinchuk is wrong as a matter of law.  As this Court has noted, "the inquiry is not whether the foreign court has analogous discovery laws that would lead to production of the materials, but whether the foreign court would consider the evidence revealed from a § 1782 order." *Via Vadis*, 2013 WL 646236, at *2.

8

to consider discovery. Thus, Mr. Pinchuk's conclusory assertion that the discovery sought "will assist" the Cyprus Court (D.I. 1 at 10) is pure speculation.

### 3) The Discovery Sought By The Subpoenas Would Circumvent The Procedural Limits Of The Foreign Tribunals

Regarding the third *Intel* factor, Mr. Pinchuk's Section 1782 application constitutes an impermissible attempt to usurp the Foreign Tribunals' control over their own proceedings. Neither the London Tribunal nor the Cyprus Court have requested this discovery, and this Court has declined "in the absence of any request from the foreign courts" to allow Section 1782 discovery out of concern that it would allow petitioners to "overcome the rules and procedures of the foreign courts." *Via Vadis*, 2013 WL 646236, at *2. This is exactly what Mr. Pinchuk is attempting to do here.

Again, the London Tribunal has expressly stated that it "does not presently need to seek assistance of the U.S. Courts for the purposes of this arbitration" and that it would "be regrettable if any decision were taken in proceedings in another jurisdiction intended to be in support of the arbitral process" at this time. (Exhibits D and G). The London Tribunal has therefore made clear that it intends to follow its own discovery procedures and rules, and clearly signaled that foreign courts should not interfere with that process. Mr. Pinchuk's decision to seek United States discovery in the face of this express directive circumvents the London Tribunal's discovery process.

Mr. Pinchuk improperly seeks to circumvent the Cyprus Court's discovery process as well, given that the Cyprus Court has not yet had the opportunity to rule on the need for or appropriateness of the requested discovery. Indeed, Mr. Pinchuk filed his Section 1782 application *the day after* initiating the Cyprus Actions. (D.I. 1; D.I. 4, Exhibit 2). That application requested production of documents within thirty days, leaving no time for the Cyprus

9

Court to rule on the proper scope of discovery in the Cyprus Actions. (D.I. 1 at 16). The Cyprus Court will surely follow its own procedures in due course, starting with a ruling on the pending motions to stay and/or dismiss, and this Court should not interfere with those procedures. And to the extent the Cyprus Court is interested in obtaining the documents sought by Mr. Pinchuk, it can always instruct a litigant to invoke Section 1782 discovery.

### 4) The Discovery Sought By The Subpoenas Is Overbroad and Unduly Burdensome

With respect to the fourth and final *Intel* factor, the Subpoenas are overbroad and unduly burdensome on their face because they seek the production of most, if not all, of Respondents' documents, they seek documents held by a foreign office or foreign affiliate of Respondents and/or documents that are located outside the United States, and many of the requests are not limited in time. (*See* Exhibits A-C). Specifically, the Subpoenas seek, among other things, all documents relating to the ferroalloy business without any time limitation, all documents relating to the board of directors without any time limitation, all documents concerning valuation of any asset without time limitation, all capitalization documents since 2006, and all financial documents since 2006, from each of the three Respondents. (*Id.*; *see also supra* at 4-5 (describing additional overbroad and burdensome requests)). It would be incredibly unfair to countenance – at Respondents' expense – a multi-national fishing expedition,[3] or attempt to predict what would or would not be relevant to the Foreign Tribunals at this time. The proper

---

[3] Putting aside the breadth of the discovery sought by the Subpoenas, the mechanics of producing these documents (particularly with respect to paper documents) would be extremely burdensome and inefficient. It literally would require Respondents to retrieve the documents in Cyprus (and potentially elsewhere), ship them to the United States for production to Mr. Pinchuk, who in turn would take them right back to Cyprus. It would be much more logical and efficient to simply have Mr. Pinchuck request the discovery through the Foreign Tribunals.

scope of discovery, if any, should be determined by the Foreign Tribunals in due course assuming, of course, that the actions even proceed.

II.   **The Court Should Vacate Its Previous Orders And/Or Quash The Subpoenas To The Extent They Require And/Or Seek The Production Of Documents Located In Foreign Countries**

Notwithstanding their belief that discovery is not warranted under Section 1782, Respondents voluntarily produced their documents located in the United States.  Mr. Pinchuk nevertheless demands that Respondents produce responsive documents located outside the United States as well.  Thus, even if the Court finds discovery is warranted under Section 1782 (and, again, Respondents respectfully submit it should not), the parties further dispute whether Respondents should be compelled to produce documents located in foreign countries for use in Foreign Tribunals in lieu of petitioning the Foreign Tribunals for such documents.  Respondents submit that such extraterritorial application of Section 1782 is inappropriate.

Under Third Circuit law, "foreign litigants may" use Section 1782 to "request production of documents that are <u>located in a particular U.S. judicial district</u> for use in foreign litigation." *Heraeus Kulzer GmbH*, 390 Fed. App'x. at 89 (emphasis added).  This comports with the prevailing view that "for purposes of §1782(a), a witness cannot be compelled to produce documents located <u>outside of the United States</u>." *Godfrey*, 526 F. Supp. 2d at 423  (emphasis added); *see also Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 52 (D.D.C. 2005) ("§ 1782 is not properly used to seek documents held outside the United States as a general matter"); *In re Kreke Immobilien KG*, 2013 WL 5966916, at *4 (S.D.N.Y. 2013) ("a § 1782 respondent cannot be compelled to produce documents located abroad").[4]  The legislative

---

[4]   A small minority of courts outside the Third Circuit have held that Section 1782 can extend to the production of documents abroad.  The primary case cited for this proposition is *In re Gemeinschcaftspraxis*, 2006 WL 3844464, at *6-7 (S.D.N.Y. Dec. 29,
(Continued . . .)

history of the underlying statute supports this view. Indeed, the primary intent of the 1964 amendments to Section 1782 was "to clarif[y] and liberalize[] existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and <u>documentary evidence in the United States</u>." S. Rep. No. 88-1580 (1964) (emphasis added). Professor Hans Smit, who prepared the final version of the 1964 amendments, explained that Section 1782 should not "be used to compel production of tangible evidence located outside the district and, more particularly, in a foreign country," because otherwise Section 1782 would become an instrument used to "interfere with the regular court processes in [that] other country," and it would make American courts "clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world." Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*, 25 Syracuse J. Int'l L. & Commerce 1, 11 (1998).

These concerns are amplified here, where Mr. Pinchuk, a litigant in Cyprus and London, seeks to use Section 1782 in lieu of the discovery rules and procedures in Cyprus and London to obtain evidence located in Cyprus and elsewhere the day after filing the action Cyprus Actions. Thus, the Court should vacate its Orders and/or quash the Subpoenas to the extent they compel or seek the production of documents located outside the United States.

---

(. . . continued)
    2006). That case, however, has not even been followed in its own district, and should not be followed here. *See, e.g.*, *Godfrey*, 526 F. Supp. 2d at 423 (refusing to follow *Gemeinschcaftspraxis*); *Kreke Immobilien KG*, 2013 WL 5966916, at *4 (same). As the Southern District of New York noted in *Godfrey*, the *Gemeinschcaftspraxis* case is based on an incorrect reading of the Supreme Court's decision in *Intel*. *Godfrey*, 526 F. Supp. 2d at 423. Specifically, *Gemeinschcaftspraxis* ignores that the *Intel* court "implicitly assumed that evidence discoverable under § 1782(a) would be located in the United States." *Id*. (citing *Intel*, 542 U.S. at 264 ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; <u>hence, their evidence, available in the United States</u>, may be unobtainable absent § 1782(a) aid")).

## **CONCLUSION**

For the forgoing reasons, this Court should vacate the non-document preservation portions of its Orders and/or quash the Subpoenas.

SEITZ ROSS ARONSTAM & MORITZ LLP

 /s/ Bradley R. Aronstam
Bradley R. Aronstam (Bar No. 5129)
Benjamin J. Schladweiler (Bar No. 4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
baronstam@seitzross.com
bschladweiler@seitzross.com

*Counsel for Chemstar Products LLC,
Demeter Diversified LLC, and Empire
Chemical LLC*

Dated:  March 10, 2014

13

## **CERTIFICATE OF SERVICE**

I, Bradley R. Aronstam, hereby certify that on March 10, 2014, I caused the foregoing *Respondents' Opening Brief in Support of Motion to Vacate In Part the Court's Orders Granting Ex Parte Application Pursuant to 28 U.S.C. § 1782 and Compelling Production and/or Quash Subpoenas* to be served via electronic mail upon:

Kelly E. Farnan
Anthony Gerard Flynn, Jr.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
farnan@rlf.com
flynn@rlf.com

*Counsel for Victor Mikhaylovich Pinchuk*

                                                */s/ Bradley R. Aronstam*
                                                Bradley R. Aronstam (Bar No. 5129)